May it please the Court, Lamiya Shanti Ryan for Appellant Vaatausili Alaimalo. What's at stake at this case, $150? I'm sorry? What's at stake at this stage of the game in this case? Was it $150 or was it a $50 special assessment at the time? I mean, is that what this... No, of course, if you're asking about the same case. Mr. Alaimalo is presenting the argument that he should meet the requirements of the escape hatch of 2255. I understand that. I'm just trying to understand how many times this issue has gone back and forth over what appears to me to be possibly $100 to $150. Well, to him... I don't see any injustice here. To him it's about innocence. He's clearly trying to challenge all of his convictions and his life sentences, but the claim is he is innocent. He's not challenging them here. He's lost other challenges. What he's challenging, he's serving a life sentence that seems to me to be totally insulated from challenge at this point. What this back and forth is all about is whether or not what I can see is probably $150 special assessments. Was it two counts that you're challenging or three? I don't remember. Three. So it's $150. Three counts. And in this case, the U.S. attorney has said that the collateral consequences are enough and... Well, I don't know. That doesn't... Look, the Supreme Court said that the special assessment is enough to justify, you know, essentially junking the concurrent sentence doctrine, or the notion that judges or an appellate court has discretion to avoid reaching issues because of the concurrent sentence doctrine. But here we have a situation where it's hard to foresee any possible collateral consequence. It's not as if he's serving a 10-year sentence, and if he goes out and he commits another crime, it will be a predicate, or all the other things that are conjured up to do away with the notion that a court should have some discretion. We're in here, as I see it, this comes down to whether there's some injustice that requires, as you argued in the brief, abandoning the law of the case doctrine. Another panel of this court has already ruled on this issue explicitly. And the manifest injustice is the actual innocence of Mr. Alamalo on those three counts. Oh, this is actual innocence. He was possessing methamphetamine. You know, it's a question of... I forget the difference. I always get confused between duplicitous and multiplicitous, but it's as if he were charged with five counts of doing the same thing instead of three. I mean, that's basically it. He was possessing methamphetamines with the intent to distribute it, so on two counts they put a label calling it importation instead of distribution. I mean, it's hard for me. I'm very sympathetic to true innocence arguments, but this just seems to me to be the whole procedural posture of this case. It sort of reflects Judge Friendly's view that if a man from Mars suddenly showed up, we'd have a hard time explaining to him what was going on. I think it is procedurally complicated and interesting. I do think that two points. One is that to Mr. Alamalo, actually innocent of the three convictions does mean something. He is hopeful and perseverant. But why should I care that it's important to him? Maybe he has nothing else to do but file these petitions and we go through them. I don't know. I wouldn't need a chart to chart the procedural aspects of this case, but there are people in jail who have nothing better to do, so they file petitions. Why should we care that it's important to him? The basic fact is that I can't see any injustice in this case that would require certainly the abandonment of the law of the case. I think that the case itself, what's involved here, which was the Ninth Circuit turning around on its own decision and saying it's no longer illegal, it's no longer importation to mail methamphetamine from California to Guam. And we can't foresee in this courtroom right now what might happen in the future with his claims. All we can look at is when was he convicted of the main charge, the life sentence? I think it was quite a long time ago. Right. And he was persistent. I understand that. Does he have a right to be resentenced if these three convictions are set aside? I don't know whether that would be appropriate or not, because he would have the life sentence still on count number six, the mandatory life sentence. Let me ask a question. The First Circuit changed around on this rule quite a few years before. I forget when it was, but quite a few years ago. Should we say that at that point it could have been fully challenged? No, absolutely not. I think that in this case, even after that First Circuit opinion, there were opinions coming out of the circuits holding exactly the opposite, and it really wasn't until Cavapang came down that the law was really changed in the opposite direction. So it's very much unlike Harrison, where the subsequent cases were more of a refining or an explanation or a definition of the terms. They weren't a complete reversal of what the case law had been before. I guess that the question that Judge Horman is essentially raising is that the issue was raised and it was ruled against him. So should we say that the law of the case precludes a change? Well, no, there are several reasons why the law of the case shouldn't apply here. One is that, well, the decision was clearly erroneous. That's basically the argument that I'm making in Argument 1. And it didn't consider what has come up as this interesting complication, which is the fact that Mr. Alamalo did present, he actually did present the claim to the Ninth Circuit. At the first time, nobody mentioned it. They just ignored it. Everyone ignored that it happened. So I think that that's evidence that the claim was really not available at that time. And that wasn't addressed by the Ninth Circuit in its prior ruling. It was available. He made it. He simply lost another panel of the Ninth Circuit at a subsequent point, brought that argument because it was raised. I don't know. What was the impediment here in his way of raising this argument? Well, the standard to meet the escape hatch is whether the legal basis of the claim arose after his. But there was another Ninth Circuit case in the 2255 context that rejected that argument and said that 2255 was adequate. Now, maybe that was wrong, too. But how many times wrong is not enough to abandon the law of the case, is it? Well, clearly erroneous is the standard, and manifest injustice. But going back to clearly erroneous. Right, and that's where I'm getting. I don't see any manifest injustice here. He's got a mandatory life sentence, and I don't see any manifest injustice. And it's really troubling to read the history of this case and the 2254s and the 22, rather, the 2251s and the 2255s, and it just never ends over what appears to me to be not an injustice. This guy was dealing in methamphetamines at most. They charged him with five counts instead of three. And he's doing a life sentence, and it's hard to conceive of any collateral consequence that's going to flow from that other than the special assessment, which I don't consider any great injustice. Although I can see clearly that you are not sympathetic to Mr. Alamalo, I think that, for instance, in Kabakang is a very good example. The defendants there were convicted of multiple counts, importation, possession of the like. Their convictions were reversed for importation. I understand that, but that's on direct appeal in the Supreme Court. You know, the concurrent sentence doctrine no longer has any role to play, but we are dealing with a different standard, as you just indicated, that in order to get around the law of the case doctrine, one of the things you have to meet is an injustice. And I don't see any. I'm not going to say it again, but I don't see any injustice here. I think the injustice has been for the judicial system, which has had to put up with these repeated efforts by the defendant over what appears to me to be nothing. Including your time, which might be better spent representing somebody else who was the victim of an injustice. Well, I was appointed on the case. I know. And I take what comes to me. I know. But that's my point. You were appointed, you were asked, and you're doing a great job, but you should be helping somebody who may actually be the victim of an injustice. I actually think there is an injustice here, which is he has a claim of actual innocence. His conviction and three life sentences, those are no longer crimes anymore. And he, for some reason, which I am trying to understand, the courts will not address his claims. And I suppose it's because of the lack of sympathy for him. But, for instance, the whole escape hatch jurisprudence developed right after Ed Poe was passed. And a lot of the cases involved a U.S. Supreme Court case called Bailey, which basically said if you have a gun in a crime, you actually have to use it. Possession is not enough. And so all these cases came forward where their 255s had already been completed. And they said, look, I only possess the gun. I didn't use it. I'm actually innocent from that crime that I was convicted of. And there was great sympathy for them, even though there's no argument that they didn't do the crime, that they were at home instead. They used a gun in a crime or carried a gun in a crime. And yet the courts were very sympathetic and very much realizing that if we don't give them relief, if we don't provide them an opportunity for relief, the whole constitutionality of Ed Poe is at issue, because actual innocence must be an exception. I have two views of actual innocence. One is actual innocence, and one is a guy is committing a crime. He's dealing with methamphetamines, and it's simply they used the wrong label on two counts, and they charged him with five counts when they should have charged him with two. I mean, that to me is different from somebody who didn't commit any crime and was prosecuted for it. There's a big difference here. This guy is not a terribly sympathetic character. Now, whether he should have gotten a mandatory life sentence, I'm not taking any position on it. It struck me as being a very harsh sentence, and maybe in other parts of the country, like Brooklyn, he might have gotten a better plea bargain. But at this stage of the game, he's got a mandatory life sentence, and he did commit the criminal acts, and don't you see a difference between someone who did nothing wrong and somebody who was just an overcharge in an indictment? I see the difference, but talking about the escape hatch, looking at escape hatch jurisprudence, for example, Treisman out of the Second Circuit, it was the gun, the Bailey case, and there's no difference in the case law. And so I'll reserve 18 seconds. I'll give you. Okay. Thank you. Good morning, Your Honors. May it please the Court, Rosalyn Wang for the United States. As Judge Korman has said, this case has a very long procedural history. This is the fifth time the petitioner has applied to this Court in one way or another for relief. It's the third brief that this office in the Central District has submitted to the Ninth Circuit. But everybody's been wrong all along the way. Is that not right? I don't – well, I think just the issue of him being legally innocent isn't enough at this stage. The escape hatch is there. The standard is that you have to be actually – you have to make an argument of actual innocence. Well, he is actually innocent. He did not commit a crime for three of the convictions. He did not – that conduct did not fall under the importation charge. However, it does – it is still a crime in terms of possession with intent to distribute methamphetamine. So he was never charged with that. He actually was charged, Your Honor, in counts. In the other counts. In the other counts with that, yes. Yes. And so it's not really the standard actual innocence case where you have somebody who's in jail wrongly charged. That's the situation that the courts are trying to guard against with the escape hatch. And that's not the situation here. You have somebody who's in life – who's in for a life sentence anyways. And his conduct actually did constitute a crime. Well, what if the facts were that if you took away these three crimes, that the sentence for the others would be less? Would your position still be the same? Well, the position would be the same because – That would be more difficult, though. It would be a less – it would be a more sympathetic case, obviously. And I think maybe more leniency is given by the Ninth Circuit in a situation like that where you have someone who's clearly innocent. But as a matter of legal analysis, is there a difference? As a matter of legal analysis, the defendant still has an obligation to use every procedural opportunity that he has. And in this case, he had the opportunity. I think the crux of that matter is the availability of the importation argument. The First Circuit case, Ramirez-Ferrer, it came out in 1996. The defendant filed his appellate brief. He cited Ramirez-Ferrer. He made the argument. So therefore, it was obviously available to him. And then on top of that, he had – This is available to him in the Ninth Circuit where we consistently ruled that importation was a crime. Well, I look at the availability definition under Ivey, which is the argument was not available if the legal basis for the petitioner's claim didn't arise until after he had exhausted his habeas and his direct appeal. But in this case, you did have a legal basis. You had a First Circuit case directly on point. Well, but you also had Ninth Circuit authority at that time, and one Ninth Circuit panel is bound by another. Yes. No, I agree. The law in the circuit was against him. However, there was the clear beginnings of a circuit split at that time, and any defense attorney knows that when there's a circuit split, that is an argument. What was it at that time of time? Where was it? At the time that he was making his appeal, Ramirez-Ferrer had already come out, and the Ninth Circuit cases going against him had already been out. The Ninth Circuit cases came out in the 80s. Ramirez-Ferrer was very early in his career. So you're saying what he should have done is he should have really argued for an en banc hearing? Well, I think given the timing of the procedure, what he should have done is brought it up in his first habeas petition like he did in his direct appeal and brought it up during the appeal of the denial of his first habeas petition. But he did bring it up initially, and the Ninth Circuit, as though it wasn't even there because they thought it was a specious argument, didn't deal with it. And my response to that would be the Supreme Court case in Bousley. The standard there is, well, in that case, you're talking about defaults on direct appeal in a habeas context. But the quote from Bousley is, Fertility cannot constitute cause if it means simply that a claim was unacceptable to that particular court at that particular time. And it's always been the case that defendants, they have the obligation to raise and preserve their claim even if the law is hostile to them at the time. Here it's not even that far-fetched that the law would have changed because, again, you have a circuit split that's clear. You know, Judge Corman, you know, raises a very good point. Why waste all of this judicial time on something like this? If the government had just said, yeah, we'll wipe out those three, we would have all gone home and that would have been the end of the story. So it cuts both ways. And I would agree with that, Your Honor. But on the other hand, even with an actual innocence claim, defendant has the obligation to take all of his procedural opportunities. He doesn't get to just essentially be lax and sometime down the road. I don't think this is a case of relaxation. It's just the opposite here. He's pressing all the time. Well, again, he had the opportunity and chose not to raise that particular claim. So and in terms of in relation to Harrison, the Ninth Circuit case of Harrison, with regard to that particular issue, I think this case is actually somewhat stronger than Harrison because Harrison, this court required the defense attorney to have extrapolated a favorable argument for the petitioner. From the previous case law, whereas here we have the First Circuit case that's directly on point. So really all they had to do was make the same argument in Ramirez-Ferrer and make the same argument that he had made on direct appeal.  No. The last time the case was here, it was on a 2241, and he lost making the identical argument. Am I right? Yes, Your Honor. He did lose, and the panel in that case specifically said that with regards to the Caba King argument, the district court correctly concluded that 28 U.S.C. 2255 was not an inadequate or ineffective remedy so as to allow Alamalo to proceed under 2241. So that is directly on point. What the petitioner has done here is couched the argument slightly differently. He's now making an ineffective assistance of counsel claim because his counsel didn't raise the Caba King argument before. And the reason that's actually bad for petitioner is that ineffective assistance of counsel is not an actual innocence argument. So under that rubric, he doesn't qualify for the savings clause. Let's kind of take that argument apart. Because of incompetence of counsel, his actual innocence claim was not raised. Is that what we're saying here? That's what he's saying. I'm getting confused between all of these petitions. I thought it was raised in that simply this Ninth Circuit didn't address it on his direct appeal. I thought that's what happened there. Am I wrong? He did raise it on a direct appeal. The Ninth Circuit didn't address it there essentially. So where is the incompetent? There was no incompetent assistance of counsel on direct appeal because counsel raised it. Counsel raised it. And, again, I don't think there was an ineffective assistance of counsel on the habeas appeal either. The first 2255? On the first 2255, it doesn't rise to the level of ineffective assistance because obviously the counsel was aware of it and made some kind of strategic decision not to raise it. So there's no constitutional right. At what point would it become incompetence of counsel? I don't think it could have been those earlier hearings where there's a whole wall of Ninth Circuit law going the other way. So at what point was counsel under an obligation to raise it? Certainly at the time that the appeal to the first habeas petition was filed. That claim should have been included in there. Because at that time, we hadn't decided whatever it is yet. Right. You had not, but the Caba-Kung opening brief had been filed. At that time? Right. So the opening brief in Caba-Kung was filed right around the same time in December 1999 as the defendant's first 2255 habeas petition was filed. Would we hold counsel to an obligation to be knowing what's going on in other cases which haven't been decided? That's a pretty high standard. I don't think so, and particularly not in this case. I don't think it's a particularly high standard, but certainly not in this case because you have the same attorney who was arguing Caba-Kung, as was representing the same attorney who successfully argued Caba-Kung. And I think that's what makes this particular case unique. That complicates things, doesn't it? If there are no further questions, I'm going to submit your honors. No, thank you. Thank you very much. Thank you. I'd like to first address what the shorthand standard is, is the unobstructed procedural shot at presenting your claim. But really, I think this case makes clear that really the standard needs to be something more like the unobstructed procedural shot at presenting your claim after the claim is legally available. And so what's clear here is that in the direct appeal, he raised it, but it wasn't available yet. It wasn't available until Caba-Kung. So even Sarah Courageous, the attorney representing both Mr. Caba-Kung and Mr. Alamalo, even she really didn't know it was available. Why she raised it for one client and not another, we will never know. And she doesn't remember, by the way. But Alamalo was completed before En Bon Preview was granted, in this case, so that Alamalo's appeal was argued and submitted on November 4, 2002, two days later the Ninth Circuit granted En Bon Preview and Caba-Kung. So that's maybe when the inkling could have occurred to her that this claim actually had something to it, and it was after this case had been completed. So although not sympathetic, Mr. Alamalo does meet the escape hatch criteria. Okay. Thank you. Thank you. We do appreciate the arguments in this case. Thank you.  Thank you. Thank you. Thank you.
judges: Korman, Fletcher B. , Paez